**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PAMELA DENIHAN, ) | CASE NO. 1:11-cv-2568 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Pamela Denihan ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On April 4, 2008, Plaintiff filed an application for a POD and DIB and alleged a disability onset date of December 31, 2003.  (Tr. 41.)  The application was denied

initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 41.) On August 24, 2010, an ALJ held Plaintiff's hearing by video conference. (Tr. 41.) Plaintiff participated, was represented by an attorney, and testified. (Tr. 41.) A vocational expert ("VE") also participated and testified. (Tr. 41.) On September 10, 2010, the ALJ found Plaintiff not disabled. (Tr. 49.) On September 30, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On November 25, 2011, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On March 29, 2012, Plaintiff filed her Brief on the Merits. (Doc. No. 7.) On May 11, 2012, the Commissioner filed his Brief on the Merits. (Doc. No. 10.) Plaintiff did not file a reply brief.

Plaintiff contends that "the ALJ failed to consider the totality of the record that provides substantial evidence of [Plaintiff's] disability prior to June 30, 2005." (Pl.'s Br. 10.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 40 years old on her date last insured. (Tr. 47.) She had at least a high school education and was able to communicate in English. (Tr. 47.) She had past relevant work experience as a cashier. (Tr. 47.)

### B. Medical Evidence

#### 1. Medical Evidence Prior to Plaintiff's Date Last Insured

On January 21, 2003, Plaintiff presented to the hospital with complaints of

2

chronic pelvic pain, particularly in the right lower quadrant. (Tr. 172.) Dr. Philip Brzozowski, M.D., attended to Plaintiff and indicate the following. (Tr. 172.) Plaintiff's pelvic pain had persisted "for the last several months." (Tr. 172.) A pelvic ultrasound revealed a complex right adnexal mass. (Tr. 172.) Further, Plaintiff had a history of endomitriosis. (Tr. 172.) Dr. Brzozowski diagnosed Plaintiff with chronic pelvic pain and subfascial hematoma; and Plaintiff underwent a total abdominal hysterectomy, bilateral salpingo-oophorectomy, and reexploration of the abdomen for subfascial bleeding. (Tr. 172-73.) On January 26, 2003, Plaintiff was discharged with Ibuprofen. (Tr. 172.)

On September 19, 2003, Plaintiff underwent laparoscopic enterolysis with Dr. Raymond P. Onders, M.D. (Tr. 733.) Dr. Onders' post-operative diagnosis was "extensive intra-abdominal adhesions." (Tr. 733.)

On January 26, 2004, Plaintiff presented to Dr. Thomas I. Janicki, M.D., with complaints of "chronic pelvic/abdominal pain and new specific pelvic pain, dysuria, and dysperunia since hysterectomy." (Tr. 877.)

On May 3, 2004, Plaintiff presented to Dr. Bruce Piszel, M.D., upon referral from Dr. Janicki. (Tr. 882.) Dr. Piszel indicated that Plaintiff described her lower abdominal pain as "constant, quantified at 5/10, occasional burning, made worse with any truncal movement." (Tr. 882.) Dr. Piszel diagnosed Plaintiff with "a bilateral genitofemoral neuralgia" and indicated that the condition "may respond to a genitofemoral block with fluoroscopic guidance." (Tr. 882.) Dr. Piszel also noted that Plaintiff "was previously tried on Neurontin with severe side effects of lethargy making continuation of medication not possible," and that Plaintiff "related that she is extraordinarily sensitive to

3

any and all opiates." (Tr. 882.)

On October 15, 2004, Plaintiff underwent bilateral genitofemoral nerve radiofrequency neurolysis to treat her bilateral genitofemoral neuralgia. (Tr. 735.) Dr. Mark V. Boswell, M.D., performed the procedure and indicated that Plaintiff "improved with diagnostic injections on two occasions with greater than 50% relief for about 1 week or slightly less." (Tr. 735.) Dr. Boswell further indicated that Plaintiff tolerated the procedure well. (Tr. 735.)

On February 11, 2005, Plaintiff continued to complain of "severe lower abdominal pain" and "pain of the vaginal cuff," and she was diagnosed with pelvic and abdominal adhesions. (Tr. 182, 187, 191.) She underwent an operative laparoscopy with laparoscopic lysis of the adhesions, resection and repair of the vaginal cuff, and a "laparoscopic extensive enterolysis and sigmoidoscopy." (Tr. 182, 187, 191.)

Treatment notes from May 16, 2005, through Plaintiff's date last insured indicate that Plaintiff continued to suffer abdominal pain. (Tr. 863-64, 866.) On May 20, 2005, Plaintiff was prescribed Danazol. (Tr. 864.)

## 2. Medical Evidence After Plaintiff's Date Last Insured

On December 22, 2005, Plaintiff presented to Dr. Onders for a follow-up on her abdominal pain. (Tr. 881.) Dr. Onders indicated the following. Plaintiff had undergone two laparoscopies with him, and Plaintiff "had no success in relief of her pain with either of [the] laparoscopies." (Tr. 881.) Indeed, Plaintiff's "symptoms have not changed at all." (Tr. 881.) Dr. Onders concluded as follows:

> In this patient with a long history of adhesions, who has undergone two very aggressive lysis of adhesions with no change in her symptomology, I think undergoing any further laparoscopy is not worth the risk of injuring the bowel

4

> and making things worse. She obviously will just reform these adhesions, and there is actually no benefit for repeat laparoscopy because we have never had any success with her. I discussed this with her and I really have no other options for her.

(Tr. 881.)

On May 17, 2006, Dr. Janicki authored a letter regarding Plaintiff's condition and indicated the following. (Tr. 878.) Dr. Janicki believed Plaintiff's pain "is most likely secondary to adhesions from her previous history of endometriosis." (Tr. 878.) He had "no other advice for medication to try" and suggested that Plaintiff stop taking Zelnorm and use Milk of Magnesia to regulate her bowel movements. (Tr. 878.)

On June 19, 2006, Plaintiff underwent a right genitofemoral nerve block. (Tr. 883.)

On September 18, 2006, Plaintiff presented to Dr. John Dorsky, M.D. (Tr. 275.) Dr. Dorsky indicated that he believed Plaintiff's symptoms were related to colonic inertia and recommended a subtotal colectomy. (Tr. 275.) On November 5, 2006, Plaintiff underwent a subtotal colectomy with Dr. Dorksy. (Tr. 271.)

On January 11, 2007, Plaintiff presented to Dr. Dorsky for a follow-up on her surgery; and Dr. Dorsky indicated that Plaintiff "still complain[ed] of some pressure pain in her lower abdomen and fullness." (Tr. 253.) Dr. Dorsky further indicated that he "reassured" Plaintiff; recommended a follow-up with the Pain Therapy Clinic for a possible hypogastric block; and would see Plaintiff again in three months. (Tr. 253.)

Plaintiff was hospitalized from May 10 to May 19, 2007, for "chronic abdominal pain" with "intermittent nausea and vomiting." (Tr. 207.) During her stay, she underwent an exploratory laparotomy, lysis of adhesions, and duodenojejunostomy.

5

(Tr. 207, 214.) Dr. Jeffrey L. Ponsky, M.D. attended to Plaintiff and diagnosed her with "duedenal obstruction from superior mesenteric artery syndrome." (Tr. 207.)

Between November 6, 2007, and January 7, 2008, Plaintiff was hospitalized several times because of nausea, vomiting, and chronic abdominal pain. (Tr. 308, 414, 656, 714.) On December 16, 2007, she was diagnosed with gastroenteritis. (Tr. 714.)

On January 11, 2008, Plaintiff underwent a differential epidermal nerve block. (Tr. 372.)

On April 26, 2008, Plaintiff was admitted to the hospital because of protracted vomiting and nausea over the past two weeks and chronic right lower quadrant abdominal pain. (Tr. 402.) Plaintiff was diagnosed with nausea and vomiting caused by gastroparesis. (Tr. 405.)

On June 24, 2008, state agency reviewing physician Charles A. Derrow, M.D., reviewed the record evidence and concluded that Plaintiff was not disabled through June 30, 2005. (Tr. 87.)

On July 5, 2008, Dr. Thomas F. Eiswerth, M.D., completed a medical source statement regarding Plaintiff's ability to perform physical work-related activities and indicated the following. (Tr. 743-45.) Plaintiff could lift and carry no more than 10 pounds; stand and walk for less than 2 hours in an 8-hour workday with normal breaks; and sit for about 3 hours in an 8-hour workday with normal breaks. (Tr. 743.) She could sit for 35 minutes before she needed to change positions; and she could stand for 20 minutes before she needed to change positions. (Tr. 743.) She needed to "walk around" every 30 minutes for 10 minutes at a time. (Tr. 744.) She required an at-will sit/stand option, and she needed to lie down at unpredictable intervals during a work

6

shift. (Tr. 744.) She could never climb ladders; but she could occasionally twist, stoop, bend, crouch, and climb stairs. (Tr. 744.) She should avoid concentrated exposure to extreme heat and cold; avoid even moderate exposure to perfumes; and avoid all exposure to high humidity, fumes, odors, dusts, gasses, solvents, and cleaners. (Tr. 745.) Her impairments, limitations, or treatment could be expected to cause Plaintiff to be absent from work more than four days a month; and the limitations applied, at the earliest, since April 2007. (Tr. 745.)

On July 27, 2008, Plaintiff was admitted to the hospital for two days because of intractable nausea and vomiting with abdominal pain that was likely secondary to gastroparesis. (Tr. 479.)

On August 19, 2008, Dr. Neil A. Jacobson, M.D., authored a medical source statement regarding Plaintiff's ability to perform physical work-related activities and indicated the following. (Tr. 740-42.) Plaintiff could lift and carry no more than 10 pounds occasionally and less than 10 pounds frequently; stand and walk for less than 2 hours in an 8-hour workday with normal breaks; and sit for about 3 hours in an 8-hour workday with normal breaks. (Tr. 740.) She could sit for 60 minutes before she needed to change positions; and she could stand for 20 minutes before she needed to change positions. (Tr. 740.) She needed to "walk around" every 30 minutes for 5 minutes at a time. (Tr. 741.) Dr. Jacobson's other opinions essentially were the same as Dr. Eiswerth's. (*See* Tr. 741-42.) Plaintiff's impairments, limitations, or treatment could be expected to cause Plaintiff to be absent from work twice a month; and the limitations applied, at the earliest, since March 2007. (Tr. 742.)

On October 9, 2008, state agency reviewing physician Willa Caldwell, M.D.,

7

affirmed Dr. Derrow's conclusions. (Tr. 88, 571.)

On November 28, 2008, Dr. Melanie A. Lynch[1] authored a medical source statement regarding Plaintiff's ability to perform physical work-related activities and indicated the following. (Tr. 737-39.) Plaintiff could lift and carry less than 10 pounds; stand and walk for less than 2 hours in an 8-hour workday with normal breaks; and had no limit in how long she could sit in an 8-hour workday with normal breaks. (Tr. 737.) She required an at-will sit/stand option, and she needed to lie down at unpredictable intervals during a work shift. (Tr. 738.) Her postural limitations were the same as those indicated by Drs. Eiswerth and Jacobson (*see* Tr. 738), but she had no environmental restrictions (Tr. 739). Her impairments, limitations, or treatment could be expected to cause Plaintiff to be absent from work more than four days a month; but Dr. Lynch did not indicate the earliest date from which the limitations would apply. (*See* Tr. 739.)

**C.     Hearing Testimony**

**1.     Plaintiff's Hearing Testimony**

Plaintiff testified at her hearing as follows regarding her condition between December 2003 and June 2005. Plaintiff had worked part-time as a caterer. (Tr. 13.) Four or five days a month, she awoke with bouts of vomiting that required admission to the hospital for days at a time. (Tr. 24-25.) She rated her pain at between 5 and 6 on a scale to 10 in severity. (Tr. 18.) She took medication that caused a tingling sensation in her hands and numbness in her tongue, but she retained her ability to use her hands. (Tr. 19.) She could walk halfway around her "block" without pain; stand for about half

---

[1] The record does not clearly indicate Dr. Lynch's credentials.

8

an hour; and sit for between 45 and 60 minutes before she had to stand, stretch, and move. (Tr. 20.) She awoke at 7:00 A.M. to prepare her sons for school. (Tr. 21.) She then sat for a few hours before taking a shower. (Tr. 21.) She did light house cleaning, cooked dinner, and cleaned one load of laundry per day. (Tr. 21-22.) She went grocery shopping with assistance. (Tr. 22.) She also spent time watching television and taking naps. (Tr. 22.) Although she did not visit friends, she occasionally visited her mother. (Tr. 22-23.) She went to restaurants approximately once per month, although she preferred not to do so or travel far because she had problems digesting food and was afraid she would not be able to return home quickly enough to use a restroom. (*See* Tr. 23.)

### 2. Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical to the VE:

> The first one will concern an individual of the claimant's age, education and past relevant work. This individual can sit six hours during the course of an eight hour day and stand and/or walk two hours during the course of an eight hour day, can lift up to five pounds frequently and 10 pounds occasionally. They [sic] have no limitations with regards to pushing and pulling. This individual should not climb ladders, ropes or scaffolds.

(Tr. 30.) The VE testified that the hypothetical person could not perform Plaintiff's past relevant work, but could perform other work as a cable assembler (for which there were 1,680 jobs in northeast Ohio and 280,160 jobs in the nation), dowel inspector (for which there were 970 jobs in northeast Ohio and 467,010 jobs in the nation), and charge account clerk (for which there were 2,901 jobs in northeast Ohio and 244,690 jobs in the nation). (Tr. 30-32.)

The ALJ thereafter asked whether the hypothetical person could still perform the

9

jobs to which the VE testified if the hypothetical person additionally could be expected to miss two or more days of work per month because of pain and other symptoms. (Tr. 32.) The VE testified that no jobs would be available to a person who missed more than two days of work a month. (Tr. 32.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2005.

2. The claimant did not engage in substantial gainful activity during the period form her alleged onset date of December 31, 2003 through her date last insured of June 30, 2005.

3. Through the date last insured, the claimant had the following severe impairments: endometriosis; status post hysterectomy; status post resection of vaginal cuff; status post intra-abdominal adhesions; superior mesenteric artery (SMA) syndrome; status post colectomy; colonic inertia; bilateral genitofemoral neuralgia.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work . . . with no climbing of ladders, ropes, or scaffolds.

6. Through the date last insured, the claimant was unable to perform

11

>    any past relevant work.
>
>    . . . . .
>
> 9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2003, the alleged onset date, through June 30, 2005, the date last insured.

(Tr. 43-48.)

### V. LAW & ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignment of Error

In order to qualify for an award of disability insurance benefits, a claimant must establish the onset of disability prior to the expiration of her insured status. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). Plaintiff contends that "the totality of the medical records," including the opinions of Drs. Eiswerth, Jacobson, and Lynch, "demonstrate that [Plaintiff] suffered from disabling abdominal pain prior to her date last insured," and that "the ALJ failed to account for the nature of Plaintiff's chronic impairment and . . . adequately address medical evidence subsequent to [Plaintiff's] date last insured which was probative of her condition prior to the expiration of [her] insured [status]." (Pl.'s Br. 15.) For the following reasons, these contentions are not well taken.

To the extent Plaintiff merely argues that substantial evidence supports the conclusion she was disabled prior to June 30, 2005, such an argument is not availing because a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. Further, Plaintiff

13

provides no basis to conclude the ALJ failed to consider the entire record adequately and as a whole. The ALJ stated that "the evidence of record as a whole fails to substantiate the existence of a disability prior to June 30, 2005." (Tr. 47.) She observed that Plaintiff had been hospitalized multiple times since November 2007; and she considered the opinions of Drs. Eiswerth, Jacobson, and Lynch. (Tr. 47.) She gave no weight to Dr. Eiswerth's and Dr. Jacobson's opinions because the doctors indicated that their opinions were applicable only since 2007; and she gave no weight to Dr. Lynch's opinions because Dr. Lynch did not indicated the earliest date from which her opinions were applicable, and a review of Dr. Lynch's treatment notes did not support the conclusion that her opinions were applicable prior to June 30, 2005. (Tr. 47.) Plaintiff does not argue that the ALJ improperly assessed this medial opinion evidence.

The ALJ further explained that Plaintiff's longitudinal medical history was not necessarily consistent with Plaintiff's allegation of disability. (Tr. 46.) Although Plaintiff underwent multiple procedures related to her abdominal pain, there were no contemporaneous treatment records documenting "continued abdominal pain or frequent bad days." (Tr. 46.) The medical records before and after the date last insured showed a clear distinction in the severity of Plaintiff's abdominal pain and associated symptoms. (Tr. 46.) For example, although Plaintiff required multiple hospitalizations after the date she was last insured, there was no evidence that she required hospitalization during the period in which she was insured. (Tr. 46.) The record also contained inconsistent statements from Plaintiff. (Tr. 46.) Although Plaintiff alleged her abdominal pain had been disabling, she rated her pain at only 5 on a scale

14

to 10 in severity; and although the evidence showed that Plaintiff was sensitive to narcotic medication, the evidence also showed that Plaintiff responded well to injection treatments. (Tr. 46.) Finally, the ALJ observed that Plaintiff's activities of daily living supported the conclusion that Plaintiff could perform at least sedentary work consistent with the ALJ's RFC determination. (Tr. 46-47.) Plaintiff does not argue that the ALJ improperly assessed her credibility.

The ALJ concluded that, "[b]ased on the lack of supporting objective findings as well as the claimant's statements regarding her exertional tolerances and her continued work as a caterer," Plaintiff "would be capable of a range of sedentary work." (Tr. 47.) Plaintiff does not point out any defect in the ALJ's analysis of the record evidence either before or after the date Plaintiff was last insured, and the evidence reasonably supports the ALJ's determination that Plaintiff was not disabled prior to June 30, 2005. Accordingly, Plaintiff's contentions are not well taken.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date:  August 17, 2012